NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|                           |     |                              |
| ------------------------- | --- | ---------------------------- |
| MARSELIS GASTON,          | )   |                              |
|                           | )   |                              |
| Petitioner,               | )   | Civil Action No. 04-1168 (KSH) |
| v.                        | )   |                              |
|                           | )   | **OPINION**                  |
| KATHRYN MACFARLAND, et al., | ) |                              |
|                           | )   |                              |
| Respondents.              | )   |                              |

**KATHARINE S. HAYDEN, U.S.D.J.**

Petitioner Marselis Gaston's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is currently before this Court. Petitioner is a state prisoner confined at South Woods State Prison in Bridgeton, New Jersey.

## I.  Factual History[1]

On August 12, 1997 in Paterson, New Jersey, Robert Hall – the victim in the crime for which petitioner was tried and convicted – cashed his paycheck and after having dinner at a local restaurant, proceeded to a nearby park.  Sometime  after midnight, while walking home, Hall encountered the co-defendant, Mary Gaston (hereafter "Mary") whom Hall had known for over a

---

[1]The facts are derived from the New Jersey Appellate Division's opinion on petitioner's direct appeal, which was attached as Exhibit 4 to Respondent's Answer.

1

year.[2] Mary asked to borrow five dollars. Apparently, Hall took money out of his pocket, but instead of money he gave her a scratch-off lottery ticket.

According to Hall's testimony at trial, as he was putting his money back into his pocket, he was hit in the back of the head twice. When he turned around, he saw petitioner with a crowbar in his hand. Hall grabbed petitioner and both fell to the ground.  In the struggle, the crowbar was dislodged, and petitioner yelled for Mary to hit Hall with it. She picked it up and hit Hall above the right eye three times. Hall testified that while he was on the ground he was also kicked about five times. Hall claimed petitioner and Mary then tore open his pocket and Mary took his money. At the sound of someone approaching, petitioner and Mary jumped into a car and drove off.

Petitioner testified at trial to a distinctly different version of events. At the time, petitioner lived with Mary in Paterson. He claimed that on the night in question, he was home watching television when Mary returned home crying and claiming that Hall had offered her money for sex. Petitioner went out and located and confronted Hall, who picked up a brick and hit petitioner in the back of the head with it three times.

---

[2]At the time of the incident, Mary and petitioner were married and living together but by the time the trial began, petitioner stated during cross-examination that he was no longer married to Mary.

Petitioner grabbed Hall and both men fell to the ground. Petitioner then grabbed the brick and used it to hit Hall in the face, then returned home. Petitioner denied that he and Mary ever tried to rob Hall or that he used a crow bar.

## II.  Procedural History

On February 5, 1998, a grand jury indicted petitioner and Mary, charging both of them with first degree attempted murder, in violation of N.J.S.A. 2C:2-6, 2C:5-1, and 2C:11-3 (Count 1); first degree robbery, in violation of N.J.S.A. 2C:2-6 and 2C:15-1 (Count 2); and third degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:2-6 and 2C:39-4(d)(Count 3).

Petitioner and Mary were set to be tried together and were released on bail pending trial. Their original trial date was set for March 23, 1998 but due to the State's inability to locate the victim, the trial was adjourned until April 6, 1998, then to June 22, 1998, then again to May 24, 1999.  At that time a try-or-dismiss date was set for November 15, 1999, but the case was again postponed and given a new try-or-dismiss date of March 20, 2000. Once again, the matter was postponed, still because the victim was missing. On October 24, 2001, during a pre-trial hearing, petitioner's counsel requested the trial judge, Hon. Randolph Subryan, to dismiss the matter due to the excessive time that had passed since the indictment was returned. Judge Subryan

ruled that the trial would be adjourned until November 2, 2001,
giving the State one last opportunity to locate the victim. On
November 2, the State notified the court that the victim had been
located.

Petitioner and Mary were tried November 26 - 29, 2001.  The
jury acquitted on the attempted murder charge, but convicted them
of the lesser included offense of second degree aggravated
assault, first degree robbery, and third degree possession of a
weapon for an unlawful purpose. The judge revoked bail and denied
petitioner's motions for judgment of acquittal, new trial, and
bail pending sentencing.

On April 25, 2002, petitioner was sentenced to 15 years for
the first degree robbery and a concurrent 7 years for the second
degree aggravated assault, both with an 85 percent parole
disqualifier. Mary was sentenced to 12 years for the robbery
conviction and a concurrent 6 years for the aggravated assault.
For both petitioner and Mary, the third degree possession of a
weapon for an unlawful purpose conviction was merged into the
aggravated assault convictions.

On June 3, 2002, petitioner filed a direct appeal, raising
the following claims: (1) by failing to dismiss a sleeping juror,
the trial judge violated petitioner's Sixth Amendment
confrontation clause right, his right to a fair and impartial
jury, his right to effective assistance of counsel, and his due

4

process rights; (2) the trial judge gave an erroneous accomplice instruction that violated petitioner's due process rights; (3) because the trial judge refused to grant an acquittal and because the State failed to establish his guilt beyond a reasonable doubt, petitioner was denied due process; (4) the excessive delay in setting a trial date violated petitioner's right to a speedy trial; (5) comments by the prosecutor compelled petitioner to testify and violated his right to remain silent; (6) the trial judge erred in failing to charge the jury on the lesser included offense of theft and thus violated petitioner's due process rights; (7) in refusing to grant a new trial, the judge violated petitioner's due process rights; (8) the trial judge improperly sentenced him because the mitigating factors substantially outweighed the aggravating factors; and (9) since each of the offenses related to the same incident with the same victim, the convictions for aggravated assault and possession of a weapon for an unlawful purpose should have been merged into the robbery conviction and all the sentences should run concurrently.

On October 29, 2003, the Appellate Division affirmed the conviction and the sentence. Petitioner presented the same arguments to the New Jersey Supreme Court in a petition for certification that was denied on January 22, 2004. State v. Gaston, 178 N.J. 454 (2004). This petition seeking habeas relief timely followed on March 9, 2004.

### III.   <u>Standard of Review Under 28 U.S.C. § 2254</u>

In addressing petitioner's claims on the merits, the Court must be mindful of the extent of federal review available to him under the Antiterrorism and Effective Death Penalty Act (AEDPA), which was enacted in 1996 and significantly amended 28 U.S.C. § 2254. The relevant part of the statute states that a federal court shall have the power to grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This federal habeas power is further restricted by 28 U.S.C. § 2254(d), which states that with respect to any claim adjudicated on the merits in a State court, the federal courts shall not grant a writ of habeas corpus unless that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has stated that the "contrary to" language and the "unreasonable application of" language of § 2254(d)(1) and (2) have independent meanings. <u>Williams v. Taylor</u>, 529 U.S. 362, 404-405 (O'Connor, J., Part II) (2000). The decision of a state court is "contrary to" federal law established by Supreme

Court precedent if it "contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of the [Supreme Court] and nevertheless arrives at a [different result]." Id. at 405-406. See also Williams v. Price, 343 F.3d 223, 228-229 (3d. Cir. 2003).

A state court decision amounts to an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case." Williams v. Taylor, 529 U.S. at 407-408. For a state court decision to be an unreasonable application of Supreme Court law, the decision must be more than "incorrect or erroneous," it must be objectively unreasonable. Id. at 411. See also Rico v. Leftridge-Byrd, 340 F.3d 178, 181 (3d. Cir. 2003) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d. Cir. 1999). "Clearly established federal law as determined by the Supreme Court" pertains to the holdings of the Supreme Court's decisions, not the dicta, "as of the time of the relevant state court decision." Williams v. Taylor, 529 U.S. at 412.

## IV. **Procedural Prerequisites**

Federal habeas review does not proceed to the merits unless certain procedural requirements are met, including timeliness and exhaustion. 28 U.S.C. § 2244(d)(1) and 28 U.S.C. § 2254(b)(1).

7

**A.   <u>Timeliness</u>**

As earlier indicated, petitioner timely filed his habeas petition. Pursuant to 28 U.S.C. § 2244(d)(1)(A), the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  A judgment becomes final on "the date on which the defendant's time for filing a timely petition for certiorari review expires." <u>Kapral v. United States</u>, 166 F.3d 565, 577 (3d. Cir. 1999). The New Jersey Supreme Court denied petitioner's application for certification on January 22, 2004. Petitioner actually had until April 21, 2005 to file his petition because his co-defendant, Mary, was pursuing appellate review as well which concluded after petitioner's certification petition was denied. He filed his petition with this Court on March 9, 2004, which was within one year statute of limitations period.

**B.   <u>Exhaustion</u>**

As a further prerequisite, a state prisoner must first exhaust all available state remedies before a federal court may consider that prisoner's habeas petition. 28 U.S.C. § 2254 (b)(1)(A). Requiring the petitioner to present the state courts with the first opportunity "to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," supports the principle of comity. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844 (1999). Exhaustion is

not satisfied if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

In order to meet the exhaustion requirement, petitioner must "fairly present" the federal claim to the highest state court before asserting that claim in a federal habeas petition. Picard v. O'Connor, 404 U.S. 270, 275 (1971). A claim is fairly presented when the petitioner presents to the highest court of a given state a "legal theory and supporting facts" that are "substantially equivalent" to those asserted in the habeas petition. Doctor v. Walters, 96 F.3d 675, 678 (3d. Cir. 1996). Petitioner must set forth the federal law claim in such a way as to put the state courts on notice that there is a federal claim being presented. Purnell v. Hendricks, 2000 U.S. Dist. LEXIS 16327 (D.N.J. 2000), at *7 (discussing McCandless v. Vaughn, 172 F. 3d 255, 261 (3d. Cir. 1999)). The state courts need not discuss the merits of the claim for the exhaustion requirement to be satisfied. Swanger v. Zimmerman, 750 F.2d 291, 295 (3d. Cir. 1984)(discussing Picard, 404 U.S. 270 (1971)).

Petitioner raises nine claims in support of his petition for habeas relief, each of which was presented on direct appeal to the New Jersey Appellate Division and the New Jersey Supreme Court. This Court deems, and the State concedes, each claim to have been "fairly presented" for purposes of satisfying the

9

exhaustion requirement. (<u>See</u> Ans. ¶ 13.)

The Court will address each claim independently, first examining the treatment of the claim in the state courts, and then analyzing it under habeas jurisprudence.

## VI.  <u>Discussion</u>

### A.  <u>Sleeping Juror</u> (Ground I)

During the trial, the judge observed one of the jurors nodding off during defense counsel's cross examination of the victim. The judge held a hearing in chambers and questioned the juror, during which the following colloquy took place:

> **The Court:** Mr. Thompson, the reason I asked you to come in here -- let me add right away, this was not brought to my attention by any of the attorneys. I saw it during the course of the morning. You appeared to be nodding off. A couple of times I looked towards you, I saw you head going to your left shoulder. When I discharged the jury at lunch time you were, in my opinion you appeared to have been sleeping. I just wanted to know exactly what was going on because n fairness to all three parties involved in this case, the State and two Defendants, I want jurors to be very attentive and listening to everything being said. Were you sleeping this morning?

> **Juror Thompson:** A little, a little.

> **The Court:** See, my observation is that during the cross-examination of Mr. Wobbekind that you were sleeping because I saw your head -- you know, I look around the courtroom. I saw you head going towards the left on at least two, three occasions. You were sitting like this and your head was going towards the left. What brought it out to me very strongly, when I discharged the jurors for lunch I don't know if you were aware that I said it's time to go to lunch. It took a few seconds or when people started moving around you.

> **Juror Thompson:** Yeah, I was like, I was still listening but I was, had my eyes closed.

10

**The Court:** You were sleeping at some time, were you not?

**Juror Thompson:** Just, yes, yes.

**The Court:** All right. Would you go back out for a minute. If necessary, I'll send for you again.

**Juror Thompson:** Then I fully awoke.

(Tr. of Nov. 27, 2001 at 105:15-106:25.)

Judge Subryan then discussed the matter with the attorneys, raising the issue of race because the defendants were both African-American:

**The Court:** Let me tell you something, as all judges, I'm very conscious what is going on in the courtroom. We have two minority defendants. We have only two, three actually, one Hispanic and two African Americans, and Mr. Thompson is an African American juror. I don't want to remove him from the panel.

**Mr. Wobbekind [Petitioner's defense counsel]:** That's my gut reaction, the breakdown of jurors. I'm comfortable with him. He obviously should pay attention.

**The Court:** He was not. I'm telling you, he was not. As Miss Mitra said, one of the things I said, you have to pay attention to the witnesses. You have to study their demeanor, that's the only way you can judge the credibility of the witness. He did admit that he had his eyes closed most of the time. He definitely was sleeping. I saw it. I don't want to remove him from the jury. As you said, I'm conscious of the fact that there are only three minority jurors. What I'm trying to say to you, if you don't want me to remove him, because most of what I saw was during your cross-examination, despite that are you comfortable with him remaining on the jury? If you are, I'll leave him on.

**Mr. Wobbekind:** I'm comfortable. I don't want to lose the juror. As I said, one of the things I said on the opening, when you're third on the list, sometimes gets repetitive. That could have been it, he heard a lot of it.

**The Court:** That doesn't justify sleeping.

11

**Mr. Wobbekind:** I didn't see him doing what Your Honor described. And he said, yeah, he was nodding but he was listening. I assume he caught -- all of a sudden, you may go like that, nod. I don't know how long. Again, you may want to find out, did you catch most of the testimony, most of the cross-examination. I assume he wasn't -- it wasn't a lengthy period of time he was sleeping. He may have just nodded for a few seconds. I don't know, I didn't make the observations. Maybe you should make an inquiry.

**The Court:** If you're comfortable -- a lot of it that I saw occurred during your cross-examination. If you're comfortable with him staying on, you tell me that. I'll leave him on... Do you have any objections to that, Mr. Kaiser?

**Mr. Kaiser (Mary Gaston's defense counsel):** No, Your Honor...

(Tr. of Nov. 27, 2001 at 108:21-111:1.)

Petitioner alleged four constitutional violations based on the sleeping juror: violations of his confrontation clause right, his right to fair and impartial jury, right to effective assistance of counsel, and his due process rights.

The trial judge refused to grant the motion on these grounds, which petitioner asserted in his motion for a new trial. In his ruling, the trial judge stated that after noticing the sleeping juror, he immediately brought it to the attention of the defense counsel and prosecutor and also conducted a hearing with the juror. (Tr. of Apr. 19, 2002 at 55:3-8.) The judge also recounted that he was prepared to remove the juror, even though he was very concerned about removing a minority juror and the potential for a <u>Batson</u> challenge on appeal, but for strategic

12

reasons, defense counsel chose to keep the juror on the panel.
(Id. at 55:13-56:10.)   The judge concluded that defense counsel
had discussed the matter with his client and both agreed to allow
the juror to continue. (Id. at 56:11-13.)

On appeal, the Appellate Division first noted that the trial
judge properly conducted a hearing to determine whether in fact
the juror had been sleeping, as required by New Jersey case law.
See State v. Reevey, 159 N.J. Super. 130, 133-135 (App. Div.
1978). The appellate court rejected petitioner's contentions and
held there was no presumption of prejudice attached to the
alleged jury misconduct because no juror was exposed to
"extraneous information," which would have raised the presumption
of prejudice. See Remmer v. United States, 347 U.S. 227, 229
(1954) ("[I]n a criminal case, any private communication,
contact, or tampering, directly or indirectly, with a juror
during a trial about the matter pending before the jury
is...presumptively prejudicial....").

The appellate court noted that defendant had the burden to
show both that the juror was inattentive and that prejudice
resulted, and held that there was no such showing for several
reasons.   The juror was only asleep for a brief period of time.
Also, after the trial judge questioned the sleeping juror and
during the conference with counsel over the matter, petitioner's
counsel stated that he did not believe the juror missed any

critical information because the cross-examination had gotten to be repetitive. Additionally, neither petitioner nor his counsel requested that the juror be removed but instead requested that the juror remain.

In analyzing petitioner's ineffective assistance of counsel claim, the Appellate Division rejected out of hand petitioner's contention that "since the juror was asleep during counsel's cross-examination, this is tantamount to there having been no cross-examination at all."  The court also rejected petitioner's second argument that he did not waive his right to ask for the juror's removal, noting that petitioner did not argue that he disagreed with his counsel's decision to keep the juror on the panel.  The court disagreed that the trial judge had to examine petitioner as to whether or not he agreed with the choice.  The Court did not specifically discuss the confrontation clause violation claims during the sleeping juror analysis.

1.  **Confrontation Clause Violation**

Before this Court, petitioner alleges that his Sixth Amendment confrontation clause right was violated because his defense was built around the cross-examination of victim Hall, the State's lone witness. Since the juror fell asleep during a portion of the cross-examination, the argument goes, the right to confront witnesses was "effectively eviscerated" inasmuch as the juror only heard the State's case.

14

Although the right secured by the Sixth Amendment to confront and cross examine a witness is not absolute, "its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process.'" Chambers v. Mississippi, 410 U.S. 284, 295 (1973) (citing Berger v. California, 393 U.S. 314, 315 (1969).

While this claim was not specifically discussed by the Appellate Division, this Court concludes that leaving the juror on the panel did not result in a denial or "significant diminution" of petitioner's right to confront witnesses. The record indicates the juror was inattentive for only a short period of time and neither the juror, petitioner's lawyer, or the reviewing courts considered this significant. The trial transcript establishes that defense counsel thoroughly cross examined the victim and was not unduly restricted by the trial judge in his questioning. (Tr. of Nov. 27, 2001 at 70-104.) Also, as noted by the trial judge and the Appellate Division (in discussing the sleeping juror), when questioned by the judge in chambers, the juror stated that he may have dozed off a bit but was listening with his eyes closed. (Id. at 105:15-106:25.) Further, petitioner's counsel requested that the juror remain on the panel because the juror was a minority and even stated that the cross-examination was repetitive and that he believed the juror "heard a lot of it." (Id. at 108:21-109:25.)

15

The Court is satisfied that retention of this juror was not contrary to, or an unreasonable application of federal law. Habeas relief is denied on this claim.

**2.  Denial of Right to Fair and Impartial Jury**

Petitioner contends that the sleeping juror denied him his right to a fair and impartial jury as secured by the Sixth and Fourteenth Amendments of the United States Constitution.

It has been held that a sleeping juror should be removed if the sleep has made it "impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial." United States v. Freitag, 230 F.3d 1019, 1023 (7th Cir. 2000). But courts are not automatically required to remove a sleeping juror; instead they have a considerable amount of discretion in determining how to handle the situation. Id.; see also United States v. Barrett, 703 F.2d 1076, 1083(9th Cir. 1982); United States v. Springfield, 829 F.2d 860, 864 (9th Cir. 1987) ("[e]very incident of juror misconduct does not require a new trial"). Sleeping is a form of jury misconduct, and the defendant must demonstrate both that the juror in question ignored an essential portion of the trial and that the defendant was prejudiced by the juror's misconduct. United States v. Ortiz, 1993 U.S. Dist. LEXIS 10856, at *5 (E.D. Pa. 1993) (citing United States v. Hendrix, 549 F.2d 1225, 1229 (9th Cir. 1977). A defendant's "general assertion that jurors slept through parts of

16

the critical presentation of the defendants evidence and cross examination are too vague to establish prejudice." United States v. Tierney, 947 F.2d 845, 868-869 (8th Cir. 1991).

As the appellate court concluded, petitioner made no showing that he suffered any prejudice as a result of the juror's brief nap. The juror was only asleep for a brief period of time and the trial judge questioned him promptly upon noticing his condition. Moreover, during the conference with counsel over the matter, petitioner's counsel stated that he did not believe the juror missed any critical information because the cross-examination had gotten to be repetitive. (Tr. of Nov. 27, 2001 at 109:22-24.)  As discussed by the court, neither petitioner nor his counsel requested that the juror be removed. Petitioner and his counsel made the strategic decision at trial to keep the juror on the panel to maintain the racial makeup of the jury.

Given the foregoing, the Court finds that petitioner has not demonstrated that it was impossible for that juror to perform his or her duties. As such, the Appellate Division's decision that petitioner was not denied his right to a fair and impartial jury was not contrary to or an unreasonable application of clearly established federal law and petitioner is not entitled to habeas relief on this claim.

### 3.   Violation of Right to Effective Assistance of Counsel

Petitioner asserts that the sleeping juror denied him his right to effective assistance of counsel because the juror was sleeping during the defense's cross-examination of the State's lone witness, and this was equivalent to an absence of counsel or no cross-examination at all.  This somewhat convoluted argument leads petitioner to contend that his attorney was "ineffective through no fault of his own." (Petition, at 10.)

Such an argument clearly falls short of meeting the familiar requirements of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), as duly noted by the Appellate Division. Conflating a juror's claimed inattentiveness with a defense attorney's ineffectiveness in no way demonstrate that his counsel's performance was deficient as measured by an objective standard of reasonableness "under prevailing professional norms" or that petitioner was prejudiced by the performance. This claim is dismissed.

### 4.   <u>Violation of Due Process and Fundamental Fairness</u>

Petitioner seeps together the foregoing arguments and contends that the doctrine of fundamental fairness requires this Court to grant a writ of habeas corpus. But the real inquiry here, especially since the trial was about the credibility of the victim versus the credibility of the defendant, is whether the juror slept through a portion of the trial that was so critical to a finding on credibility that there was a constitutional deprivation. The record very clearly demonstrates that this never

18

happened.   The decisions of the state courts pertaining to the
sleeping juror were not contrary to and did not involve an
unreasonable application of clearly established federal law.
Habeas relief is denied on this claim.

**B.   <u>Jury Instructions</u>** (Grounds II and VI)

Petitioner contends that the trial judge gave the jury an
erroneous accomplice instruction, which violated petitioner's due
process rights. Specifically, petitioner asserts that the weight
of the evidence adduced at trial demonstrated that petitioner was
the accomplice to the robbery and not the principal and the judge
should have instructed the jury on that theory. Petitioner also
asserts that the trial judge's failure to charge the jury on the
lesser included offense of theft violated petitioner's due
process rights.

Jury instructions are matters of state law and are generally
not cognizable under federal habeas review. The relevant question
for federal courts is whether "the ailing instruction by itself
so infected the entire trial that the resulting conviction
violates due process." <u>Estelle v. McGuire</u>, 502 U.S. 62, 72
(1991). Petitioner must "establish not merely that the
instruction is undesirable, erroneous, or even 'universally
condemned', but that it violates some constitutional right." <u>Id.</u>
(quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977)).

19

Petitioner's argument fails.  To begin with, it was the State's theory and the Indictment that set forth who was the accomplice and who was the principal, and the jury instructions merely mirrored the distinction. Nonetheless, after the evidence was in, petitioner's defense counsel objected to the charge and the trial judge overruled him on grounds that the evidence supported the Indictment. (Tr. of Nov. 29, 2001 at 63:1-4.) On petitioner's direct appeal, the Appellate Division stated that the claim was without merit and did not warrant discussion.

In denying defense counsel's request for an instruction on the lesser included offense of theft, the trial judge stated:

> [I]t is my decision that theft is not an issue in this case because the defendant testified that there was a fight, that he did not take anything from the victim. If, in fact, there was anything taken, it had to be taken in the course of an assault. Therefore, robbery is only going to be charged in the first and second degree.

(Tr. of Nov. 28, 2001 at 88:25-89:11.)

Neither this analysis nor the Appellate Division's discussion concerns issues of constitutional dimension, and petitioner fails to demonstrate in any way that the decisions of the state court on the instructions amounted to a fundamental defect in the trial proceedings. As such, the claims are not cognizable on federal habeas review and relief is denied.

**C.   Refusal to Grant Acquittal; Failure to Establish Guilt Beyond a Reasonable Doubt** (Ground III)

20

Petitioner contends that the trial judge erred in refusing to grant petitioner's motion for judgment of acquittal on all counts and further that the State failed to establish his guilt beyond a reasonable doubt, which amounted to due process violations. Petitioner cites to numerous inconsistencies from Hall's testimony in support.

The trial judge, in refusing to grant petitioner's motion for a new trial, ruled that the credibility issue was for the jury to decide. (Tr. of Apr. 19, 2002 at 57:2-7.) He further added that this was not a case where the jury was not told of inconsistencies in a witness's testimony. (Id. at 57:8-15.) Rather, the defense counsel effectively uncovered inconsistencies in the victim Hall's testimony and the jury observed all of it. Finally, the judge stated that "if anybody lacked credibility during that trial, it was Mr. Gaston." On appeal, the Appellate Division held that this claim was without merit and did not warrant discussion.

In essence, petitioner is making a sufficiency of the evidence challenge. When reviewing a challenge to the sufficiency of the evidence under §2254(d)(2), a federal court will not grant habeas relief on a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The Supreme

21

Court has held that the question is "whether, after viewing the evidence in its entirety, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The trial judge properly held that it is the province of the jury to weigh the evidence and decide the credibility issue between the witnesses. Petitioner's argument boils down to *his* belief that Hall was not a credible witness, or alternatively, that he was more credible. This does not amount to a claim of constitutional violation. Habeas relief is denied on this claim.

D.  **Sixth Amendment Guarantee of a Speedy Trial** (Ground IV)

Petitioner asserts that the delay from the date he was indicted to his trial constitutes a violation of his Sixth Amendment right to a speedy trial and his Fourteenth Amendment due process rights.  Petitioner and his co-defendant were indicted on February 5, 1998 for crimes allegedly committed in the early morning hours of August 13, 1997, but their trial did not begin until November 26 of 2001.

Factually, the delay came about because the prosecutors could not locate the victim and were, in fact, looking for the wrong victim. An investigator was finally sent out by the prosecutor and this investigator found the victim at his place of work. (Tr. of Jan. 18, 2002 at 6:1-12.)

The Supreme Court has enunciated four factors as part of a balancing test that must be conducted on a case by case basis in evaluating whether a defendant's right to a speedy trial was violated. Barker v. Wingo, 407 U.S. 514, 530 (1972). The length of the delay factor serves as the initial inquiry for the analysis because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. at 530; See also United States v. Loudhawk, 474 U.S. 302, 314 (1986).  The reason for the delay is the second factor of the Barker test.  In this analysis, the court must assign "weight" to the various reasons, depending on what the reason is. Id. at 531. The defendant's assertion of his right to a speedy trial is the third factor in the analysis – as the Supreme Court has noted, the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Id. The final factor, the prejudice suffered by the defendant as a result of the delay, is analyzed by considering the interests that the right to a speedy trial was designed to protect: "to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the accused, and to limit the possibility that the defense will be impaired." Id. at 532.

After petitioner was convicted, he moved before the trial judge for bail pending sentencing. One of the grounds petitioner

23

asserted in support was that the delay in prosecution amounted to a Sixth Amendment speedy trial violation. (Tr. of Jan. 18, 2002 at 4:12-25.) In addressing petitioner's assertion of his speedy trial rights in the context of a constitutional violation,[3] Judge Subryan, while acknowledging that the delay was long, questioned how petitioner was prejudiced by the delay as it did not prevent petitioner from calling any of his witnesses. (<u>Id.</u> at 4:1-17.) The judge denied the motion on this ground finding no prejudice. (<u>Id.</u> at 22:2-6.)

The Appellate Division broadly analyzed the issue according to the <u>Barker v. Wingo</u> factors and held that petitioner was not denied his right to a speedy trial. The court found that the length of the delay was presumptively prejudicial and warranted analysis under the other factors. It noted that the reason for the delay, the State's inability to locate the victim, was one of the valid reasons under <u>Barker</u> that could justify a delay. Also, petitioner did not assert his right to a speedy trial until about one month before the trial began and petitioner did not claim that the delay prevented him from calling any witnesses or any witness's memory deteriorated as a result of the delay. Finally, the court stated that petitioner was out on bail while awaiting

───────────────

[3]Petitioner raised the trial delay during the pretrial proceedings, but couched them in Sixth Amendment terms for the first time when he moved after conviction for acquittal and for bail pending appeal.

trial. The Appellate Division concluded that the trial judge properly analyzed the claim according to the <u>Barker</u> test and there was no violation of petitioner's right to a speedy trial.

The Appellate Division's analysis covered all the <u>Barker</u> factors.  Indeed, <u>Barker</u> specifies that a missing witness can serve as a valid reason to justify a delay. <u>Id.</u> at 531. This Court concludes that the decisions of the state court on the issue of petitioner's speedy trial rights were neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court in <u>Barker</u>. Relief is denied on this claim.

**E.   <u>Prosecutorial Misconduct</u>**: (Ground V)

Petitioner contends that improper remarks made by the prosecutor in her opening statement improperly shifted the burden of proof and compelled petitioner to testify in violation of his right to remain silent. Petitioner cites to two comments:

> I'm going to ask you to listen to the witnesses very carefully, to note their demeanor and judge their credibility, and I'm also going to tell you they have no burden of putting on any type of defense. Their attorneys don't have to open if they don't want to. The burden is entirely on the State."

> It's also important that we anticipate defenses that might be used in cases like this. <u>They may say, no, it's not us</u>. Circumstantially, look at what's logical, probable and reasonable. You have the victim here telling you who did it. Ask yourselves, why would he be saying it was somebody who it wasn't.

(Tr. of Nov. 27, 2001 at 27:4-15.)

The prosecutor continued:

> Now we're talking four and a half years after the incident. <u>Maybe they will say he was coming at us and we were just protecting ourselves</u>. That's known as a self-defense theory. Again, ask yourselves, is this logical, reasonable, probable? If that was the case, <u>wouldn't they have reported it to the police</u>?

(Tr. of Nov. 27, 2001 at 28:7-12.)

Counsel for both petitioner and co-defendant moved for a mistrial contending that the prosecutor had improperly attempted to shift the burden of proof because the jury would expect the defendants to testify to answer the State's remarks. The trial judge refused to grant a mistrial, and noted that while the prosecutor's comments were "unfortunate" and inappropriate, the comments did not rise to the level of declaring a mistrial. (Tr. of Nov. 27, 2001 at 33:21-34:4.) The judge then issued the following curative instruction to the jury:

> Ladies and gentlemen, let me remind you once again of something I said to you on two or three prior occasions, what is said in opening statement is not evidence. The evidence will come from witnesses who will testify, and from whatever documents or tangible items that are received in evidence.
>
> Let me further remind you of what I said to you, that the State has the burden of proving each and every element of a charge beyond a reasonable doubt, and that burden never shifts to the defendant.
>
> It is not the obligation or the duty of a defendant in a criminal case to prove his or her innocence or offer any proof relating to his or her innocence.

26

(Tr. of Nov. 27, 2001 at 34:24-35:13.) Again, at the end of the trial during his instructions, the trial judge repeated this instruction. (Tr. of Nov. 29, 2001 at 5:7-12.)

Citing State cases, the Appellate Division found that the prosecutor's comments were improper, but not so egregious as to "cut mortally into [petitioner's] substantive rights." (Appellate Division Opinion, at 30.) The court found that trial judge properly refused to grant a mistrial because he cured the error with "clear and thorough instructions," and these instructions "adequately eliminated the prosecutor's unfortunate insinuation."

When analyzing a challenge to comments made by a prosecutor in a habeas proceeding, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986). The Supreme Court has stated that the "relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). In conducting the analysis, the court must not look at the comments in isolation but must look at the prosecutor's misconduct as part of the entire proceeding, and then assess "the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d. Cir. 2001).

When examining the prosecutor's comments in the context of the entire trial, it cannot be said that they so infected the trial with unfairness as to make the resulting conviction a denial of due process. Petitioner has not demonstrated that, but for the prosecutor's remarks, he would not have had to testify. This Court agrees with the Appellate Division that the trial judge effectively gave curative instructions both at the time the remarks were made, and again during the final jury charge, telling the jurors that the State bore the burden of proving each element beyond a reasonable doubt, that the burden never shifts to the defendant, and that the opening statement was not evidence. Juries are presumed to follow a court's explicit instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987). As a practical matter, petitioner testified, consistent with the defense strategy of presenting a credibility contest between petitioner and Hall.  He has failed to overcome the natural conclusion that the defense strategy, more than the prosecutor's comments, led to his decision to take the stand.

The Appellate Division's opinion affirming the trial judge's decision not to grant a mistrial was not contrary to, or an unreasonable application of clearly established federal law. Habeas relief is denied.

**F.   Denial of Petitioner's Motion for a New Trial** (Ground VII)

28

Petitioner argues in another catch-all argument similar to Ground I (subpoint 4) that because his due process rights, his confrontation clause right, his right to effective assistance of counsel and his right to a speedy trial were all violated, the trial judge's refusal to grant petitioner a new trial deprived him of due process.  Based on its individual analysis of the claims in Grounds I through VI, the Court finds this claim to be without merit and denies relief.

**G.   <u>Sentencing</u>** (Ground VIII and IX)

Petitioner contends that because, in his view, the mitigating factors substantially outweighed the aggravating factors, he should have been sentenced as a second degree (as opposed to first degree) offender on the robbery charge and as a third degree offender (as opposed to second degree) on the aggravated assault charge. Alternatively, petitioner asserts that he should be sentenced to the minimum sentence allowed under the law. The trial judge, exercising his discretion under the law, found that the aggravating factors substantially outweighed the mitigating factors, and sentenced petitioner as per the relevant statute. (Tr. of Apr. 25, 2002 at 30:21-25.) The Appellate Division stated this claim was without merit and did not warrant discussion.

It is fundamental that a federal court "will not review state sentencing determinations that fall within statutory

limits." <u>Siena v. Caroll</u>, 2005 U.S. Dist. LEXIS 5630, *10 (D. Del 2005); <u>White v. Keane</u>, 960 F.2d 1381, 1383 (2d. Cir. 1992). "Sentencing is a matter of state criminal procedure and it does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus." <u>Sutton v. Blackwell</u>, 327 F. Supp. 2d 477, 486 (D.N.J. 2004) (quoting <u>Grecco v. O'Lone</u>, 66 F. Supp. 408, 415 (D.N.J. 1987)).  This Court finds no reasons presented in this petition to depart from this established jurisprudence and denies relief on this claim.

### Conclusion

The Court has thoroughly discussed all claims and found they are without merit, and denies this petition in its entirety.  The Court finds that petitioner has not made a substantial showing of the denial of constitutional rights pursuant to 28 U.S.C. § 2253. A certificate of appealability will not issue.


Date: July 29, 2005                    /s/ Katharine S. Hayden
                                       Katharine S. Hayden, U.S.D.J.